**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sidney Naiman,<br><br>     Plaintiff,<br><br>vs.<br><br>Alle Processing Corporation, a New York corporation,<br><br>     Defendant. | No. CV20-0963-PHX-DGC<br><br>**ORDER** |

While shopping at Costco, Plaintiff Sidney Naiman purchased a frozen pre-packaged meat dinner made by Defendant Alle Processing Corporation. The front of the package clearly stated, in bold type: "**NET WT 40oz (2.5LB)**."  Doc. 11 ¶ 28; Doc. 15 at 6. The nutritional label on the back of the package contained information for a 10-ounce serving, but stated, incorrectly, that there was "1 servings [sic] per container." Doc. 11 ¶ 28, Doc. 15 at 5. Plaintiff claims that he bought the product in reliance on this back-side statement, assuming he was getting 10-ounces of food despite the 40-ounce label on the front and the package's 2.5-pound weight.  Plaintiff does not explain exactly when he discovered that the package contained more than 10 ounces, but it was before he opened or ate it. Plaintiff includes in his amended complaint photographs of the front and back of the package in its original wrapping. Doc. 11 ¶ 28. Thus, unless Plaintiff is in the practice of photographing all his food, it is apparent he discovered the product's true size before he opened it, and that he photographed it in preparation for this lawsuit. Rather than eating one 10-ounce serving from the package, or eating four 10-ounce servings over time, or

returning the unopened product to Costco for a full refund, Plaintiff filed this nationwide class action lawsuit seeking more than $5 million from Defendant. He claims Defendant breached express warranties in every State, was unjustly enriched in eight States by selling 40 ounces of food for a price Plaintiff thought was reasonable for 10 ounces, and defrauded consumers in Arizona. The words of Judge Silverman apply here: "Talk about chutzpah."[1] *United States v. Ramirez-Cortez*, 213 F.3d 1149, 1159 (9th Cir. 2000) (Silverman, J., dissenting). The Court will dismiss the claims for breach of warranty, unjust enrichment, and injunctive relief, strike the class allegations from the remaining consumer fraud claim, and schedule a case management conference.

## I. Background.

Plaintiff alleges that he "fell victim" to Defendant's "deceptive conduct" when he purchased its Beef Stuffed Cabbage Mon Cuisine meal on April 14, 2020. Doc. 11 ¶¶ 9, 23. But if Defendant intended to deceive Plaintiff and other consumers into believing the package contained only 10 ounces of food, it was not very astute. Directly below the photograph on the front of the package was the bolded statement: "**NET WT 40oz (2.5LB)**." Doc. 11. ¶ 28 (emphasis in original).[2] Plaintiff alleges, nonetheless, that Defendant "deceived" him and caused him to buy the product "in part" by stating, in non-bold print on the back of the package, that it contained one 10-ounce serving. *Id.* ¶¶ 26, 30. He claims he would not have purchased the meal had he known he was getting four times as much food as he thought he was buying. *Id.* ¶ 27.

---

[1] Plaintiff's boldness apparently is not limited to this case. Defendant notes that he has filed at least 48 lawsuits since 2017 in federal court alone. Doc. 15 at 6. A Pacer search confirms the number of Plaintiff's lawsuits.

[2] Plaintiff's photographs in the amended complaint are a bit blurry, but the 40-ounce disclosure is clearly visible. Doc. 11 ¶ 28. Defendant repeatedly asserts in its motion that the front of the package disclosed its 40-ounce weight (Doc. 12), an assertion Plaintiff never disputes. Defendant also provides clearer images of the front- and back-side disclosures from its stock photographs. Doc. 15 at 6. While a district court generally may not consider material not included in the pleadings, in this case Plaintiff has incorporated the photographs into his amended complaint. *See*, *e.g.*, *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (taking into consideration web pages that plaintiffs referenced in the complaint because plaintiffs "directly quoted the material posted on these web pages, thereby incorporating them into the Complaint.").

Perhaps recognizing the implausibility of his alleged scheme – "deceiving" people by persuading them they are getting *less* than they are paying for – Plaintiff tries to cast this as a case about hazardous nutritional misrepresentations. He alleges that there were actually 1,040 calories in the package, not the 260 shown on the label, but this is not an accurate portrayal of the package's nutritional information. Under the heading "**Nutrition Facts**," the back panel says: "**Serving size   10 oz. (283g)**."  Doc. 11 ¶ 28, Doc. 15 at 5 (emphasis in nutritional label). The label then identifies the nutritional amounts "*per serving*" – that is, for a 10-ounce serving – as 260 calories, 50 mg of cholesterol, and 380 mg of sodium.  *Id.* (emphasis added).  Plaintiff does not claim that these nutritional facts are inaccurate for a 10-ounce serving, nor that the food was unfit for consumption, adulterated, or inedible in some other way.

Thus, if Plaintiff examines nutritional labels as closely as he claims, he saw the serving size for which the nutritional values were accurately identified. He was not misled as to the calories in a 10-ounce serving. And he clearly discovered the true amount of the food before he opened the product and ate it, as shown by his own photographs. He did not force down 2.5 pounds of food thinking it was only 10 ounces, only to discover to his dismay that he had eaten 1,040 calories. Thus, even reading the amended complaint with all inferences drawn in Plaintiff's favor, the gravamen of his claim concerns the amount of food in the package, not its nutritional value. This case does not raise the specter of danger to public health from nutritional misrepresentations.

Plaintiff asserts three claims: (1) breach of express warranty under A.R.S. § 47-2313, Arizona's Uniform Commercial Code ("U.C.C."); (2) unjust enrichment; and (3) violation of the Arizona Consumer Fraud Act ("ACFA"). Doc. 11 ¶¶ 37-59. Plaintiff sues on behalf of himself and three classes who purchased the product from the beginning of the relevant statute-of-limitations period through the date of class notice: (1) for breach of express warranty, a class consisting of all persons in the United States who purchased the product; (2) for unjust enrichment, a subclass consisting of all persons who purchased the product in Arizona, Delaware, Louisiana, Massachusetts, Minnesota, Montana, North

Dakota, and Texas; and (3) for the ACFA claim, a subclass of all persons who purchased the product in Arizona. *Id.* ¶ 31. Plaintiff seeks a declaratory judgment, actual and punitive damages, an injunction requiring Defendant to stop selling mislabeled products, and attorney's fees and costs. *Id.* at 17. He says the claims of the class members, when aggregated, exceed $5 million. *Id.* at 13.

Plaintiff has had two opportunities to plead his claims. After meeting and conferring with Defendant about issues to be raised in the motion to dismiss, Plaintiff filed an amended complaint in August 2020. Doc. 11.

Defendant moves for dismissal of the amended complaint under Rule 12(b)(6) for failure to state a claim and under Rule 12(b)(1) for lack of subject matter jurisdiction based on lack of standing. Doc. 12 at 10-11. In the alternative, Defendant moves to strike Plaintiff's class allegations under Rule 12(f). *Id.* at 11.

**I.     Defendant's 12(b)(6) Motion.**

    **A.     Legal Standard.**

A successful 12(b)(6) motion must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court has instructed, however, that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Of particular relevance in a purported nationwide class action such as this, "something beyond the mere possibility of [relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." *Id*. at 557-58

(quotation marks and citation omitted). "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (quotations marks and citations omitted).

### B. Breach of Express Warranty.

Defendant argues that Plaintiff's breach of express warranty claim fails for lack of privity because he purchased the product from Costco, not Defendant. Doc. 12 at 12-13. Plaintiff responds that several courts have recognized an exception to the privity requirement for lawsuits involving foodstuffs. Doc. 14 at 4-6. The Court agrees with Defendant.

Plaintiff's claim is based on Arizona's U.C.C. Doc. 11, ¶ 42. The Arizona Supreme Court has made clear that a lack of privity between a purchaser and manufacturer precludes recovery based on express warranty under the U.C.C. *Flory v. Silvercrest Industries, Inc.*, 633 P.2d 383, 389 (Ariz. 1981). Other cases reflect this rule. For example, in a case concerning alleged misrepresentations on cartons of milk, a Florida federal court applied Arizona law and held that privity is required under Arizona's U.C.C. for an express warranty claim. *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1339 (S.D. Fla. 2013). The Arizona Supreme Court has also recognized this rule in other cases. *See Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile*, 640 P.2d 851, 856 (Ariz. 1982) ("*Flory* precludes a breach of warranty action under the U.C.C. against a manufacturer not in privity with the plaintiff. Because privity does not exist between appellant and Chrysler or Winnebago, manufacturers, the directed verdict was correctly granted in their favor on breach of warranty theory.").

Plaintiff correctly notes that some courts have recognized an exception to the privity requirement for cases involving foodstuffs and public health. Doc. 14 at 4-6 (citing cases); *see*, *e.g.*, *Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1023 (9th Cir. 2008) (applying California law and recognizing that "exceptions to the [privity] rule exist" for some implied warranty claims, including "special cases involving foodstuffs, pesticides,

and pharmaceuticals"). But most of Plaintiff's cases involve *implied warranties* about the fitness of products for human consumption. As one Arizona court has recognized, these are based on "the public policy to protect human health and life." *Crystal Coca-Cola Bottling Co. v. Cathey*, 317 P.2d 1094, 1097 (Ariz. 1957). These cases recognize that it would be "impracticable, if not impossible, for the ultimate consumer to analyze the food and ascertain whether or not it is suitable for human consumption." *Id*. As noted above, this case does not raise concerns about the fitness of Defendant's product for human consumption. Because Arizona law requires privity for an express warranty claim under the U.C.C., Plaintiff cites no Arizona case to the contrary, and privity clearly did not exist between Plaintiff and Defendant, the Court will dismiss Plaintiff's express warranty claim.

**C.**     **Unjust Enrichment.**

Under Arizona law, a party asserting a claim for unjust enrichment must show: "(1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of any remedy at law." *Mousa v. Saba*, 218 P.3d 1038, 1045 (Ariz. Ct. App. 2009). Defendant argues that Plaintiff's unjust enrichment claim fails because Plaintiff did not suffer any injury or confer an unjust benefit on Defendant. Doc. 15 at 16-17. The Court agrees.

Plaintiff received 40 ounces of food instead of the 10 ounces he claims he thought he was buying, at a price he thought reasonable for 10 ounces. As noted above, Plaintiff does not claim that the food was tainted or inedible, nor does he contend that the nutritional information on the back was incorrect for a 10-ounce serving. Plaintiff does not assert that he received a food product that lacked value or could not be eaten for some other reason. Thus, if anything, Plaintiff factual allegations show that he was enriched by receiving four times as much edible food as he thought he as paying for.

Plaintiff alleges that he would not have purchased the product had it not been for Defendant's misrepresentation about the product's weight and caloric content. Doc 11 ¶¶ 25-27. But this does not prove an unjust enrichment. Such a claim necessarily arises post-transaction; it asserts that – after the parties' dealings – one side was left unfairly

enriched. Plaintiff's assertion that he would not have purchased the product without the single-serving statement on the back of the package merely means that he would not have received 40 ounces of food for a 10-ounce price and Defendant would not have given up 40 ounces of food for a 10-ounce price.

The Court can see no plausible way that the facts of this case constitute an unjust enrichment. If one assumes, for example, that the "1 servings per container" statement on the back of the package had been corrected to "4 servings per container," everything on the package would have been accurate and there is absolutely no basis to believe the product would have sold for a lower price, as Plaintiff seems to suggest. Plaintiff's complaint is not that he got too little for his money, but that he got too much. This simply does not state a claim for unjust enrichment. *See Apex Oil Co. v. DiMauro*, 744 F. Supp. 53, 55 (S.D.N.Y. 1990) ("There is no unjust enrichment where a claimant has actually *benefited* from the alleged wrongdoing of another.") (emphasis in original).[3]

### D.     ACFA Claim.

Plaintiff also alleges consumer fraud. "The elements of a private cause of action under the Arizona Consumer Fraud Act are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and

---

[3] Moreover, it would undermine equitable principles for the Court to allow an unjust enrichment claim to proceed where Plaintiff has failed to take readily available actions – such as seeking a refund – to avoid the unjust enrichment. *See, e.g.*, 27A Am. Jur. 2d Equity § 18 (2020) ("It is fundamental that anyone going into equity and asking its aid submits to the imposition of such terms as well-established equitable principles require."). Additionally, the availability of a refund provides an adequate remedy that precludes any claim for an equitable remedy such as unjust enrichment. *Mousa*, 218 P.3d at 1045; *Church of Scientology v. United States*, 920 F.2d 148, 1489 (9th Cir. 1990) ("The courts have repeatedly held that the opportunity to sue for a refund is an adequate remedy at law which bars the granting of an injunction."); *Vuotto v. Abbott Labs., Inc.*, No. 10–C–7255, 2011 WL 3876923, at *4 (N.D. Ill. Aug. 31, 2011) (refund offer barred unjust enrichment claim); *In re Carolina Wine Co.*, No. 09-02275-8-ATS, 2009 Bankr. LEXIS 2156, at *10 (Bankr. E.D.N.C. July 31, 2009) (availability of a refund demonstrated adequate remedy at law that precluded a remedy of specific performance); *Key Corp. Capital, Inc. v. Cty. of Beaufort*, 644 S.E.2d 675, 677 (S.C. 2007) (availability of refund provided adequate remedy of law precluding equitable relief). As Defendant notes, Plaintiff does not allege that he sought to return the package for a full refund, consistent with Costco's return policy – a policy asserted in Defendant's motion (Doc. 12 at 12& n.2) that Plaintiff does not dispute in his response.

proximate injury." *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983) (citing *Parks v. Macro–Dynamics*, 591 P.2d 1005 (Ariz. Ct. App.1979)).

Defendant claims that Plaintiff has no cognizable ACFA claim because "a person could not have plausibly relied on the 10 ounces referenced on the back label given the front label clearly states [the product] contains 40 ounces and any person holding the product could feel the weight of 2.5 ounces of food." Doc. 12 at 18. The Court largely agrees, for reasons stated above, but Arizona cases make clear that a plaintiff's reliance under the ACFA "need not be reasonable." *Correa v. Pecos Valley Dev. Corp.*, 617 P.2d 767, 771 (Ariz. Ct. App. 1980) (citation omitted); *see also In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1023 (D. Ariz. 2017) ("An affirmative misrepresentation causes injury where the consumer actually relies on the statement, although the consumer's reliance does not need to be justifiable."). Thus, if Plaintiff can convince a jury that he actually relied on the "1 servings per size" statement on the back of the package, however unreasonably, he can make out a claim under the ACFA. The Court will deny Defendant's motion to dismiss Plaintiff's ACFA claim.

## II.     Defendant's Other Arguments.

### A.     Standing to Seek Injunctive Relief.

"Because standing affects a federal court's subject matter jurisdiction, it is properly raised in a Rule 12(b)(1) motion to dismiss[.]" *Satanic Temple, Inc. v. City of Scottsdale*, 423 F. Supp. 3d 766, 771 (D. Ariz. 2019). A "lack of Article III standing requires dismissal for lack of subject matter jurisdiction[.]" *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Where a party facially attacks subject matter jurisdiction under Rule 12(b)(1), as Defendant does here, the complaint's allegations are taken as true and construed in favor of the non-moving party. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

Defendant argues that Plaintiff has not alleged that he will continue to buy the product and thus lacks standing to seek prospective injunctive relief. Doc. 12 at 20-21. Plaintiff argues that this interpretation would preclude injunctive relief from ever being available in consumer protection cases, a "wholly unrealistic result." Doc. 14 at 11

(quoting *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012)). Plaintiff is correct that injunctive relief can be available for a consumer who "learns after purchasing a product that the label is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018). But the availability of this remedy depends on whether Plaintiff has "adequately alleged that [he] faces an imminent or actual threat of future harm" due to the misrepresentations. *Id.* at 971. In *Davidson*, for example, a plaintiff purchased pre-moistened wipes in reliance on the product's allegedly misleading representation that the wipes were "flushable." The Ninth Circuit held that the plaintiff had standing to seek injunctive relief in part because she alleged that she wanted to purchase the same wipes again – presumably in the hope that they would be improved – but had no way of determining whether she could trust the representation on the label. *See id.* at 970-71. The alleged injury, therefore, was plaintiff's "inability to rely on the information advertised . . . despite her desire to purchase truly flushable wipes." *Id.* at 971.

Plaintiff does not allege that he would purchase Defendant's product again or that he will refrain from purchasing it because he is unable to rely on the representations on the label. And on the facts of this case, it is difficult to imagine how he could plausibly do so. As other district courts have observed, the plaintiff in *Davidson* had no way of determining whether the wipes were flushable – and whether the misrepresentation had been cured – without "first buying the product at issue." *Joslin v. Clif Bar & Company*, No. 4:18-CV-04941-JSW, 2019 WL 5690632, at *4 (N.D. Cal. Aug. 26, 2019) (quoting *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG, 2018 WL 6714323, at *1 (C.D. Cal. Oct. 17, 2018)). But where a plaintiff need not purchase the product again to test the accuracy of the label, courts have been "hard pressed to see how [plaintiff] would be able to allege the requisite future harm." *Joslin*, 2019 WL 5690632, at *4.

Plaintiff cannot allege the need for future injunctive relief now that he knows the product contains 40 ounces of food. Doc. 11 ¶ 6. What is more, Plaintiff does not allege that he would consider buying the product if the misrepresentation was cured, or that he will refrain from buying it in the future based on his inability to rely on the nutritional

information panel.  Because Plaintiff does not allege facts showing a cognizable threat of future harm, he fails to establish Article III standing to pursue injunctive relief.  The claim for injunctive relief will be dismissed.

### B.     Defendant's Class Arguments.

Defendant moves to strike the class allegations of the amended complaint for failure to meet the requirements of Rule 23.  Doc. 12 at 21-24.  The Court will address this issue for the ACFA claim, but need not address it for the express warranty and unjust enrichment claims which will be dismissed.[4]

#### 1.     Motion to Strike Class Claims.

As this Court has explained elsewhere, "[m]otions to strike class allegations are particularly disfavored because it is rarely easy to determine before discovery whether the allegations are meritorious."  *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 834 (D. Ariz. 2016) (citations omitted).  The Court also noted, however, that "class allegations may be stricken when it is clear from the face of the complaint that no class can be certified."  *Id.* (citing *Baughman v. Roadrunner Commc'ns*, No. CV–12–565–PHX–SMM, 2013 WL 4230819, at *2 (D. Ariz. Aug. 13, 2013); *Tietsworth v. Sears*, 720 F.Supp.2d 1123, 1146 (N.D. Cal. 2010)).  The Ninth Circuit has also held that class claims may be struck in appropriate cases.  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir.2009) ("A defendant may move to deny class certification before a plaintiff files a motion to certify a class.").

This is one of the rare cases where striking class claims is appropriate.  Given the undisputed facts, Rule 23's requirements cannot be satisfied for the ACFA subclass.

#### 2.     ACFA Subclass.

Defendant moves to strike the class allegations for failure to meet the predominance requirement of Rule 23(b).[5]  Doc. 12 at 21-24.  "[I]n the context of a motion to certify a

---

[4] The Court similarly need not address Defendant's request to dismiss the express warranty and unjust enrichment class claims for lack of standing.  Doc. 12 at 19-20.

[5] Defendants also make arguments about the commonality and typicality

- 10 -

class, it is the [plaintiff] who bears the burden to establish that the class is certifiable. But in the context of a motion to strike class allegations, in particular where such a motion is brought in advance of the close of class discovery, it is properly the defendant who must bear the burden of proving that the class is not certifiable." *Ramos v. U.S. Bank Nat. Ass'n*, No. CV 08–1150–PK, 2009 WL 3834035, at *4 (D. Or. Nov. 16, 2009).

Plaintiff defines the ACFA subclass as "[a]ll persons in the state of Arizona" who purchased the product within the relevant timeframe. Doc. 11 ¶ 31. Defendant first contends that the proposed class is administratively unfeasible. This argument fails in the Ninth Circuit. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017) ("Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification.").

Defendant next argues that litigating the ACFA claim on a class basis would require an "individualized inquiry into the factual circumstances relating to each potential class member" – something impossible to do "absent interviewing every person who purchased the Product." Doc. 12 at 24. The Court agrees. A class action may be maintained under Rule 23(b)(3) only if "questions of law or fact common to class members predominate over any questions affecting only individual members." *See* Fed. R. Civ. P. 23(b)(3). In this case, individual issues would predominate over class issues. Because the front of the package clearly states that it contains 40 ounces of food and its size and dimensions are plainly larger than a 10-ounce container, determining reliance would require individual inquiry into whether each class member read the cover, hefted the package, and even looked at the "1 servings per container" statement on the back. Actual reliance is an element of an ACFA claim, even if the reasonableness of the reliance is not. *See Theranos*, 256 F. Supp. 3d at 1023.

As another judge of this Court has explained: "Arizona's statutory fraud acts require proof of actual reliance. . . . As such, each proposed class member must prove that he or

---

requirements of Rule 23(a), but these arguments relate to the warranty and unjust enrichment classes.

- 11 -

she relied on the misrepresentations and was damaged.  [T]he overwhelming authority in Arizona specifically requires proof of actual reliance." *Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 349 (D. Ariz. 2009).  The court in *Stratton* went on to hold:

> Although Plaintiff's proposed class may share a common legal issue, the fact finder must determine whether each class member relied on Defendants' representations . . . .  As the fact finder would need to make individualized inquiries as to each class member's reliance on the group representation, the Court finds that the proposed class's individual issues predominate over any common ones.

*Id.* at 350.

As another respected judge has noted:

> If the proposed class were to be certified, the Court would be forced to engage in individual inquiries of each class member with respect to materiality of the statement, whether the member saw Apple's advertisements or visited Apple's website, and what caused the member to make the purchase. . . . Courts routinely hold that both fraud and warranty claims are difficult to maintain on a nationwide basis and rarely are certified.

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (Fogel, J.) (citations omitted).

The predominance of individual issues is particularly clear in this case given the high implausibility that individuals who saw the package and hefted it were misled by the "1 servings per container" statement on the back.  In addition to determining whether class members actually read the back of the package, a factfinder would need to know what they thought when they hefted it, whether they were buying the package because of its labels or because their neighbor recommended it, whether they shopped for it online, and a host of other factors that could affect their alleged reliance on the back-side nutrition panel.  Individual inquiry would also be required to determine whether class members were injured – whether they ate the meal without concern or returned it to their seller for a refund – another element of an ACFA claim.  *See Theranos*, 256 F. Supp. 3d at 1023.

Because individual issues would overwhelm any attempt to try the ACFA claim on a class-wide basis, the class cannot satisfy Rule 23(b)(3). The Court will grant the motion to strike the class allegations.[6]

**IT IS ORDERED:**

1. Defendant's motion to dismiss (Doc. 12) is **granted** with respect to Plaintiff's claims for breach of express warranty, unjust enrichment, and injunctive relief, and **denied** with respect to the ACFA claim.

2. The class allegations of the amended complaint are stricken for the ACFA claim.

3. The Court will set a case management conference by separate order.

Dated this 23rd day of November, 2020.

_David G. Campbell_
David G. Campbell
Senior United States District Judge

---

[6] Plaintiff also appears to allege grounds for a Rule 23(b)(2) class, which does not include a common-issue predominance requirement. *See* Doc. 11 ¶ 37. But such a class is premised on a request for injunctive or declaratory relief and is not available in this case given the Court's dismissal of the injunctive relief claim and the likely lack of success of any declaratory relief claim for the same reason. In addition, even if injunctive or declaratory relief was available, this is a case in which damages clearly are the primary relief sought, making it inappropriate for certification under Rule 23(b)(2). *See Barraza v. C. R. Bard Inc.*, 322 F.R.D. 369, 384 (D. Ariz. 2017) ("A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) [only] where such relief is merely incidental to the primary claim for injunctive relief.") (citation omitted).